**William E. SMITH, Appellant–Defendant,**

**v.**

**STATE of Indiana, Appellee–Plaintiff.**

**No. 66A04–9105–CR–151.**

Court of Appeals of Indiana,
Fourth District.

March 26, 1992.

Rehearing Denied May 11, 1992.

Kelly Leeman, Logansport, for appellant-defendant.

Linley E. Pearson, Atty. Gen., Arthur Thaddeus Perry, Deputy Atty. Gen., Indianapolis, for appellee-plaintiff.

CONOVER, Judge.

Defendant–Appellant William E. Smith appeals his conviction for Failure to Permit Examination of Records, a class D felony. IND. CODE 6–3–6–11; IC 35–50–2–7.

We affirm.

Smith raises the following issues for our review:

1. whether the trial court erred in refusing to instruct the jury that Smith had a constitutional right to refuse to turn over incriminating records,

2. whether there was sufficient evidence to establish the existence of records, and

3. whether the trial court erred in allowing the State's witness to refer to Smith's failure to file tax returns.

In 1989, John Pavlakovic, an investigator for the Indiana Department of Revenue, received information from the Department indicating Smith, a farmer, and his wife, had not filed tax returns since 1981. Pavlakovic and Special Agent Rick Albrecht subsequently served Smith and his wife with a subpoena duces tecum issued by the Department.[1] The subpoena called for the production of "[b]ooks, accounts, Forms W–2, Forms 1099, Receipts, Invoices, Cancelled checks and any other records necessary to determine the Indiana Adjusted Gross Income Tax Liability of William E. and Beverly K. Smith, as required by IC 6–8.1–5–4." (R. 447).[2]

---

1. At the time the subpoena was served, Pavlakovic would have accepted payment without any criminal repercussions. (R. 481).

2. IC 6–8.1–5–4 states:
 (a) Every person subject to a listed tax must keep books and records so that the department can determine the amount, if any, of the person's liability for that tax by reviewing those books and records.
 (b) A person must retain the books and records described in subsection (a), and any state or federal tax return that the person has filed:

(1) for an unlimited period, if the person fails to file a return or receives notice from the department that the person has filed a suspected fraudulent return, or an unsigned or substantially blank return; or
(2) in all other cases, for a period of at least three (3) years after the date the final payment of the particular tax liability was due, unless after an audit, the department consents to earlier destruction.
In addition, if the limitation on assessments provided in section 2 of this chapter is extended beyond three (3) years for a particular tax

Smith refused to comply with the subpoena and asserted a constitutional right to privacy. The State subsequently charged Smith and his wife with Failure to Maintain Records and Failure to Permit Examination of Records. A jury found Smith not guilty of the first offense and guilty of the second. Smith's wife was found not guilty on both counts.

Additional facts will be discussed below as necessary.

Smith contends he had a constitutional right under the Fifth Amendment of the United States Constitution and Article I, §§ 11 & 14 of the Indiana Constitution to refuse to turn over his tax records to a government agency. Smith further contends the trial court erred in refusing to instruct the jury he had such a right. He cites *U.S. v. Doe* (1984) 465 U.S. 605, 104 S.Ct. 1237, 79 L.Ed.2d 552, in support of his contention.

■ In *Doe*, the supreme court held that although the contents of a document might not be privileged, the act of producing the document may be. 104 S.Ct. at 1242. The court reasoned the production of documents may be testimonial and incriminating when it concedes "the existence of papers demanded and their possession or control by the taxpayer." *Id.* (*citing Curico v. United States* (1957), 354 U.S. 118, 125, 77 S.Ct. 1145, 1150, 1 L.Ed.2d 1225). However, as noted in *In re Two Grand Jury Subpoenae Duces Tecum Dated August 21, 1985* (2nd Cir.1986), 793 F.2d 69, 73, *Doe* did not involve the production of required records. Thus, *Doe* did not place limitations upon the "required records" exception to the Fifth Amendment, an exception which allows the government to demand the production of records which are required to be kept by statute. *Two Grand Jury Subpoenae* at 73.[3]

Three other states have found the "required records" exception requires production of tax records. In *Ex Parte Klingler* (Ala.1983), 438 So.2d 307, a pre-*Doe* case, the Supreme Court of Alabama declined the taxpayer's invitation to stop the Department of Revenue's "despotic inquisition", and held that tax records required to be kept by statute must be produced upon demand by the State. In *Siegel v. New Jersey Division of Taxation* (1986), 208 N.J.Super. 588, 506 A.2d 776, *cert. denied,* 105 N.J. 568, 523 A.2d 199, the Division of Taxation moved to enforce a subpoena requiring production of sales records of a sole proprietor who was suspected of possible violations of the sales tax statutes. The trial court ordered compliance with the subpoena and the taxpayer appealed. The New Jersey appellate court noted the limitations of the Supreme Court's decision in *Doe,* and held the "required records" exception required compliance with the subpoena. The court reasoned required records are "already known to exist, thereby removing any notion of compelled testimony through their production." *Id.* 506 A.2d at 778 (*quoting State v. Stroger* (1984), 97 N.J. 391, 406–407, 478 A.2d 1175). The South Dakota Supreme Court, in the recent decision of *State of South Dakota v. Reif* (S.D.1991), 478 N.W.2d 815, also held the production of required records does not constitute self-incrimination on the part of the taxpayer required to keep the records.

■ In the instant case, Smith does not dispute that the records demanded by the Department in its subpoena were required to be kept under IC 6–3–6–10 and IC 6–8.1–5–4.[4] As required records, they were not

---

liability, the person must retain the books and records until the assessment period is over.

**3.** In *Doe, supra,* the court explicitly stated the case concerned only "business documents and records not required by law to be kept or disclosed to a public agency." 104 S.Ct. at 1239, n. 3. Doe did not appeal the District Court's order to produce required records such as W–2 statements or tax returns. *Id.*

Post–*Doe* cases discussing Doe's effect upon the exception include *In re Grand Jury Proceed-* ings (9th Cir.1986), 801 F.2d 1164; and *Grand Jury Subpoena Duces Tecum, Underhill* (6th Cir. 1986), 781 F.2d 64, *cert. denied,* 479 U.S. 813, 107 S.Ct. 64, 93 L.Ed.2d 23.

**4.** The Department of Revenue does not have the unlimited authority to compel production of all records and papers kept by a taxpayer. Therefore, a taxpayer, if he so desires, has the right to receive an *in camera* inspection of records for a determination as to which records fall within

privileged under the Fifth Amendment or Indiana's Constitution. The trial court did not err in refusing to direct a verdict in Smith's favor or in refusing to instruct the jury that he had a right to refuse production of the records sought.

Smith contends the trial court also should have directed a verdict in his favor because there was no evidence any records ever existed. Smith further contends the trial court compounded this error by giving an erroneous instruction to the jury concerning the elements of the offense.

 Albrecht testified at trial that Smith had stated "his papers were private" and he had the right to "keep them private." Pavlakovic also testified about Smith's stated concerns that the records, if submitted to the State, might eventually end up in the hands of the Internal Revenue Service. (R. 539). This testimony was sufficient to allow the jury to find there were records in existence which Smith would not allow the Department to examine. Accordingly, the trial court did not err when it refused to direct a verdict for Smith.[5]

Finally, Smith contends the trial court erred in allowing Pavlakovic to testify he received information from the Audit Division concerning Smith's failure to file tax returns. He contends this testimony was both hearsay and prejudicial.

 Hearsay evidence may be admitted for the purpose of explaining why a government official took a particular course of action. *Johnston v. State* (1988), Ind., 530 N.E.2d 1179, 1181. Pavlakovic's testimony regarding the information on Smith's failure to file tax returns was offered as the basis for Pavlakovic's subsequent investigation. It was admissible for this purpose. Accordingly, the trial court

did not err in allowing the protested testimony.

Affirmed.

CHEZEM and STATON, JJ., concur.

---

the "required records" exception. *See, Klingler, supra,* at 310.

**5.** The trial court instructed the jury the charge of Failure to Permit Examination must be supported by proof of a knowing failure "to permit the examination of any book, paper, account, record, or other data by the Department of

Revenue or its authorized agents." (R. 706). Smith contends the instruction failed to require the jury to find the records actually existed. The court did not err in giving this instruction as it tracks the language of the statute defining the offense.